Feb. 1840.

Blossom
vs.
Farnham
and others.

Farnham
v.
Blossom
and others.

## BLOSSOM vs. FARNHAM and others.

## FARNHAM vs. BLOSSOM and others.

A note payable in building and building materials made by A, with B and C as his sureties, to D, the building and building materials to be furnished after receiving thirty days notice, which notice was to be given within one year. D transferred the note to E with guarantee. E employed A to erect a house for him, to be paid in six monthly payments, the three first payments in cash and the note was to apply upon the last. A proceeded with, but did not finish the building. E paid him the three first payments in cash, about the value of the work done when A failed, within one year from the date of the note, and did not complete the building. *Held* that B and C were notwithstanding liable upon the note as the surities of A.

On the 9th day of april, 1836, the defendant, Farnham, purchased of Thomas Blossom certain premises situate in Buffalo, for the sum of $6,500, for which he agreed to pay, and executed the following papers, in consideration of the purchase of said premises, viz:

1. An indemnity against a mortgage then existing upon said premises to Harman J. Huydekooper, for $2,500.

2. An assignment, or rather transfer of a building contract, in the following words. "For value received I promise to pay Thomas Farnham, or bearer two thousand and five hundred dollars, with interest, to be paid in building in the city of Buffalo, and in materials for such building, to be done with all reasonable diligence after receiving thirty days notice, it being understood that such notice shall be given by the first day of November next.

Dated November 25th, 1835.

Signed     B. Rathbun,

N. Darrow, security,

Samuel Johnson."

which transfer was made by Farnham's signing his name to the said contract.

Feb. 1840.

Blossom
v.
Farnham
and others.

Farnham
v.
Blossom
and others.

3. By a bond and mortgage, executed by Farnham to Blossom, upon the same premises, dated April 9, 1836, for the payment of $1,425 in two equal annual payments, from May 1, 1836, with annual interest.

After this arrangement was made and the papers executed, Blossom entered into a contract with B. Rathbun, the maker of the above contract or note, to build a house for him, Blossom; which contract was dated may 12, 1836. The sum to be paid for the building of the house was $5,460, and the payments were to be made by Blossom to Rathbun, in six installments, according to the progress made in the building. Which payments were $910 each; and it was agreed by said contract that the above building note of $2,500 and interest, was to apply on the three last payments of the building contract between Blossom and Rathbun. B. Rathbun went on to build the house for Blossom, under the contract, and had got it in a considerable state of forwardness, and Blossom paid him, Rathbun, on account, July 9, 1836, $910; July 21, 1836, $910; July 30, 1836, $910, all in cash. Early in August, 1836, Rathbun failed; on the 1st of August, he ceased to proceed in the prosecution of the erection of Blossom's building. After Rathbun had failed, Blossom called upon Farnham in relation to the building note of $2,500, and, (without informing him that he had made a contract with Rathbun,) requested him to pay or secure it, as he wanted the money to complete his building. Farnham wished him to collect the note out of the makers, and not out of him;

Blossom
v.
Farnham
and others.

Farnham
v.
Blossom
and others.

but upon Blossom's urging payment, Farnham executed a note, with Orlando Allen as endorser, and delivered to Blossom, for $2,681 33, at four months, and Blossom gave Farnham a certificate that the same could be renewed twice, at four months each time, if Farnham desired it, in order to give time to have the principal collected out of the makers of the building note. The building note was then put into the hands of Blossom's attorney to prosecute as against the makers, and a suit was instituted thereon. The sureties, Darrow and Johnson, defended on the ground that Blossom had released them by making the contract, above mentioned, with Rathbun. As soon as this ground of defence was suggested, Farnham applied to Blossom to cancel and give up the note, as it was obtained, as he alleged, fraudulently, which Blossom refused to do, and Farnham forbid him from transferring it, as he should not pay it. Afterwards, and about Sept. 26, 1836, Blossom sold the note to George Palmer, for $2,502, the most part of which was paid in New York safety fund notes and some part in notes of other states. Palmer had no notice of the previous circumstances connected with the note. He purchased it as a valid note.

The suit on the building note was never tried, and the defendants obtained a judgment of *non pros.* against the plaintiff with costs, which Farnham had to pay.

After the note became due, it not being paid, Palmer commenced a suit in the Supreme Court thereon, against Farnham, the maker, and Allen and Blossom, the endorsers. Blossom filed a bill in this court against Farnham and others, to foreclose the mortgage of $1,425, which Farnham answered. And

Farnham filed a cross bill against Blossom and George Palmer, setting forth the history of the case, The answer of Blossom to the cross bill, on oath, is waived; the answer of Palmer is required on oath. By a stipulation, both the causes are to be heard together. And they now both come on to be heard on pleadings and proofs.

Feb. 1840.

Blossom
v.
Farnham
and others.

Farnham
v.
Blossom
and others.

*Hawley and Sill,* for Blossom,

*E. G. Spaulding,* for Farnham,

*Geo. W. Clinton,* for George Palmer.

THE VICE CHANCELLOR. Upon two points the testimony in this cause is not clear, or not absolutely clear.

1. The amount of labor actually performed by Rathbun upon Blossom's house, and value of materials furnished therefor, up to Aug. 1, 1836. My judgment is, upon reading the testimony, that such amount was not equal to the amount of cash paid by Blossom to Rathbun upon that contract, up to that time, viz: $2,730.

2. Whether the suit against Rathbun and his sureties on the building note, was directed to be brought by Blossom or Farnham. My inference from the testimony is, that it must be deemed to have been brought by the direction, and at the request of Farnham. Blossom having obtained Farnham's note, with a good endorser for the amount, had no further interest in the building note, except to have it speedily collected—to avoid the necessity of the renewal of the note given to him by Farnham, while Farnham had a vital interest in the building note, as he, himself, understood at the time it was directed to be put in suit after the settlement between him and Blossom.

21

Feb. 1840.

Blossom
vs.
Farnham
and others.

Farnham
v.
Blossom
and others.

There is no positive proof that Blossom agreed to prosecute this building note successfully to judgment, and in the absence of such proof, it must be assumed that its prosecution would be directed and controlled by the party who had the most interest in its collection, viz : Farnham.

A question which seems to be considered of importance in this cause, is whether the sureties for Rathbun on the building note were discharged from their obligation by the contract made between Blossom and Rathbun, of May 12, 1836. If I can draw an inference from the fact that the plaintiff's attorney suffered a *non pros* in the suit against the sureties on that note, I should suppose that the plaintiff's attorney himself considered that the contract of May 12, was a sufficient defence, on behalf of the sureties. If he came to such a conclusion, it seems to me he came to a conclusion clearly erroneous. Blossom became possessed of this building note, April, 9, 1836. This building note required Rathbun to do a specific amount of building within a reasonable time after receiving thirty days notice, and such notice was to be given as soon as the 1st November, 1836.

The holder of this note had a right to call upon Rathbun to perform its conditions whenever he pleased, but he was not *bound* to call upon him before the first of November. The sureties to the note become liable for Rathbun's performance, during the whole extent of the contract. In May, 1836, the holder of the note makes a bargain with Rathbun to build for him, to the amount of $5,460, to be paid for as the work progresses ; the three first payments in cash, and the building note to apply on the three last payments. From the prompt and rapid manner in which

Feb. 1840.

Blossom
v.
Farnham
and others.

Farnham
v.
Blossom
and others.

this work was done and in which it is known all Rathbun's work was done, it was apparent that the building would be erected and paid for long before Nov. 1, 1836. Rathbun had in fact earned by the contract a right to receive, and did receive thereon, in cash, three payments amounting to $2,730, within 20 days, the same energetic industry would have completed the whole contract in less than a month more. But Rathbun failed—that was his misfortune—the sureties misfortune—Blossom's misfortune. It was the very event against which the sureties had guaranteed by putting their names to Rathbun's paper. If Blossom, as holder of their obligation, had done nothing to release the sureties from their liability, the sureties could, of course, have no defence on that ground ; and I cannot see that Blossom's contract with Rathbun can, in any view, have the legal effect to work such release to the sureties.

This is the material ground set up by Farnham to show that his note given to Blossom, of Aug. 8, 1836, for $2,681 33 was fraudulently obtained, by the suppression of the fact, at that time, that a contract existed between Blossom and Rathbun which would operate to destroy the legal effect of the building note. The fact was suppressed, or rather it was not communicated, but if I am right, its legal operation would not be to destroy the building note and the liabilities of the sureties thereon ; and consequently the omission to mention the fact, could have been no fraud upon Farnham. He was liable to Blossom as guarantor upon this building note. This was a good consideration for his note of 8th August, and Blossom having acquired the note fairly, could at that time have made such a contract as he pleased

Feb. 1840.

Blossom
v.
Farnham
and others.

Farnham
v.
Blossom
and others.

for its transfer to Palmer. If Blossom had under-taken to collect the building note against Rathbun and his sureties, he might have been liable to Farnham for his negligence. But as I have at first remarked, the testimony does not seem to warrant that inference, and that will dispose of the question of costs of the *non pros*. If Rathbun had performed more work upon Blossom's house, at the time of his failure, than Blossom had paid him for, over and above Blossom's damage for delay, &c. that might have given Farnham an offset to the amount of the excess of work done by Rathbun over payments by Blossom. But the testimony does not seem to warrant me in the inference that there was any such excess.

If there was any such equitable offset in favor of Farnham, he could have availed himself of it in his answer. It was not necessary to resort to a cross bill for this purpose. A cross bill was not necessary to obtain a discovery from Blossom, as his answer on oath is waived. And it does not seem to be proper to mix up Palmer with the foreclosure suit. The cross bill must be dismissed with costs to be taxed. The complainant in the original bill must have a decree for the amount of his mortgage, and to save the expense and delay of a reference to a master, the court will compute the amount and direct the ordinary decree of sale for such an amount.